480 A.2d 276

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Larris FRAZIER.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Eugene BECKMAN, a/k/a Eugene Beckham.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1983.

Filed July 13, 1984.

Reconsideration Denied Sept. 11, 1984.

Marianne E. Cox, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Daniel M. Preminger, Philadelphia, for Frazier, appellee.

Richard E. Johnson, Philadelphia, for Beckman, appellee.

Before McEWEN, BECK and MONTEMURO, JJ.

BECK, Judge:

Appellees Larris Frazier and Eugene Beckman were convicted of third-degree murder and possession of an instrument of crime in the drug-related shooting of Frederick Armour. The Commonwealth brings the instant appeal from an order awarding a new trial to appellees on the ground that certain statements made by the Commonwealth's attorney in closing argument constituted impermissible prosecutorial misconduct. We find that the remarks in question did not deny appellees a fair trial and accordingly reverse.

During the Commonwealth's summation, the assistant district attorney made three allegedly objectionable series of statements:

[First] Mr. Preminger [defense counsel] says to you: Oh, Mr. Frazier, people see him. He goes up visiting to the Richard Allen Projects. Richard Allen Projects, when you can't even get the water to run and rats and roaches, he's over here dressed like he's out of Gentlemen's Quarterly, pinstripes—what's he doing up the projects every day?

. . . .

[Second] You've heard testimony from all the witnesses. Clara Sims, Kelvin Wellmaker, Jitter, Mrs. Spates. One thing they've all said that every time they've seen him, he's in the Richard Allen Projects.

THE COURT: Every time—

MR. WILLIAMS [prosecutor]: every time they see the defendant Frazier he's in the Richard Allen Projects.

It is for you to draw the inference as to what that means.

. . . .

[Third] Remember what Clara Sims said he said? Nobody comes down here and takes things from me and make me look bad.

It's the Commonwealth's contention that the killing of Smiley [victim Frederick Armour] was not done of course on a dark night in a dark alley somewhere, which it probably could have been done. You don't make an example out of somebody by murdering them in a dark alley when only two of you are there. What kind of impression does that make? You do it in front of other people to make an example.

Nobody comes down here, meaning Richard Allen Projects, and make me look bad. Well, what does that mean? It's for your determination as to what that meant.

N.T. 1784, 1786, 1789–90.[1]

Although the trial court denied Frazier's immediate motion for a mistrial, it granted Frazier's post-verdict motion for a new trial which alleged prosecutorial misconduct. Holding that the prosecutor's comments were equally prejudicial to both appellees, the court awarded the new trial to both.

Our standard of review in this case is defined by the Supreme Court's holding in *Commonwealth v. White*, 482

---

**1.** Only the first two comments were the subject of objections by defense counsel. The third comment was quoted by the lower court in its opinion and apparently formed part of the basis for its decision. *See infra* note 3.

Pa. 197, 199, 393 A.2d 447, 449 (1978): "As with a denial of a motion for new trial, so with the grant of such a motion, our review is limited to ascertaining whether the lower court abused its discretion or committed an error of law." Even with our review so limited, we are compelled to reverse.

Appellees argue that the foregoing remarks taken as a whole characterized appellee Frazier as a major drug dealer and invited the jury to speculate further along those lines, all of which worked to appellees' prejudice. Appellees maintain that the prosecutor thereby breached a pretrial agreement designed to avoid tainting the proceedings with evidence of drug use and drug sales other than the specific transaction which allegedly was the source of the hostilities between Frazier and the victim.[2] The Commonwealth's position is that the assistant district attorney's remarks were an entirely proper discussion of the evidence of Frazier's motive for the killing.

■■■ With respect to the third portion of the remarks quoted, we agree with the Commonwealth. This discussion of Clara Sims' testimony that Frazier had threatened the victim saying "Nobody comes down here ... and make [sic] me look bad" is no more than an accurate review of the evidence coupled with a suggestion that the jury could infer motive from that evidence. The prosecutor is always permitted to discuss the evidence and suggest reasonable inferences to be drawn therefrom. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Womack*, 307 Pa.Super. 396, 453 A.2d 642 (1982). There is no hint in this remark of any extraneous drug-related activity or any other irrelevant matters. We disagree with the trial

---

2. Although the pretrial conference in which this agreement was reached is not of record, its existence was mentioned during the trial and the substance of the evidentiary restrictions was discussed by the lower court in its opinion. See Lower Court Opinion at 4–6.

court's assessment that these remarks were "inflammatory and prejudicial." [3]

We find the second series of statements relating to Frazier being seen at the Richard Allen projects proper. In *Commonwealth v. Tabron*, 502 Pa. 154, 160, 465 A.2d 637, 640 (1983), our Supreme Court recognized that "we have frowned upon attempts to cause the jury to consider facts other than those raised in the particular case before it," but cautioned that "fairness dictates that the prosecution must also have a degree of latitude in the exercise of advocacy in its position." The prosecution in the instant case did not exceed those bounds of fair advocacy. In part, the prosecutor's remarks are justified as rebuttal to the defense's closing argument. Counsel for appellee Frazier had argued somewhat cryptically in summation that the Commonwealth witnesses had chosen to identify Frazier as one of the perpetrators in a fabricated version of events because he was a frequent visitor to the Richard Allen Homes project and his name and face were familiar to them (N.T. 1772–73). Allegedly improper comments in closing arguments must be evaluated in their full context, including the defense closing. *Commonwealth v. Brown*, 490 Pa. 560, 417 A.2d 181 (1980).

The first set of remarks containing the "Gentlemen's Quarterly" comment regarding Frazier's attire is not responsive to the defense summation and so is not covered by the foregoing reasoning. We find, though, that it is comparable to the kind of sarcastic remark which we found not to be prejudicial in *Commonwealth v. Ashmore*, 266 Pa.Super. 181, 403 A.2d 603 (1979) (prosecutor commented "He wasn't raped either" during defense cross-examination of a Commonwealth witness and later pointedly withdrew the word

---

3. Lower Court Opinion at 7. Neither defense counsel objected to these remarks at trial. Normally, failure to make a timely objection acts as a waiver of a claim of prosecutorial misconduct. *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Dobson*, 302 Pa.Super. 57, 448 A.2d 92 (1982). Therefore, the trial court was not in a position to grant relief based on these statements even if they were objectionable. We therefore base our conclusion first on waiver, but even absent waiver, we would hold that these remarks were not inflammatory and prejudicial.

"Gentlemen" when reformulating a question which referred to the defendant). In addition, immediately following the remark, the trial court gave cautionary instruction to the effect that the attorneys in closing may suggest inferences to be drawn *from the evidence,* but the jury is not required to accept the suggested inferences (emphasis added). *See Ashmore, supra,* 266 Pa.Superior Ct. at 189, 403 A.2d at 607 ("The nature of the reference coupled with the curative instructions of the court were such as to dissipate the harm.").

The relatively mild comments in the instant case did not prejudice the jury by stigmatizing the defendant. *Compare Commonwealth v. Baranyai,* 296 Pa.Super. 342, 442 A.2d 800 (1982) (improper to characterize police officer defendant as "a punk behind a badge," a "Buford Pusser," and a "Clint Eastwood" who used "Gestapo tactics").

The prosecutor did not express a personal opinion as to appellees' guilt of the crimes charged. Neither did he make any direct reference to other criminal conduct of appellees, i.e., involvement in the illegal narcotics trade. Notwithstanding appellees' arguments to the contrary, even the implications of the remarks in question do not amount to a characterization of Frazier as a drug dealer unless one engages in the most tenuous of reasoning. Even viewed in the light most favorable to appellees, this single comment does not approach in quality the egregious course of conduct held improper in *Commonwealth v. Starks,* 479 Pa. 51, 387 A.2d 829 (1978), where the prosecutor repeatedly described the defendant as a "cocaine pusher" and "cocaine distributor" and hypothesized that "there is some child whose body is being polluted right now by those drugs." We also note *Commonwealth v. Rivera,* 470 Pa. 131, 367 A.2d 719 (1976), in which the prosecutor's reference to the defendant as a "junkie" was held not to require a mistrial.

Even if we were to find that the "Gentlemen's Quarterly" comment was improper, we do not agree that a new trial is indicated. Not every improper or intemperate remark by the prosecutor mandates a new trial; rather, a

new trial is necessary only if "the unavoidable effect [of the comments] would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Dreibelbis,* 493 Pa. 466, 477–78, 426 A.2d 1111, 1117 (1981), quoting *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975); *Commonwealth v. Van Cliff,* 483 Pa. 576, 397 A.2d 1173 (1979). We hold that the prosecutor's closing remarks in this case did not deprive appellees of a fair trial.

It is therefore clear that the trial court misapplied the law when it granted a new trial. The closing remarks of the prosecutor could not and did not create in the minds of the jury a fixed prejudice or bias against either appellee which deprived them of a fair trial.[4]

The order granting a new trial is reversed and the case remanded for sentencing. Jurisdiction is relinquished.

## ORDER

And Now, this 11th day of September, 1984 Appellee's "Motion to Amend Judgment", which this court shall treat as a petition for reconsideration, is denied because the time period for reconsideration has expired. It is the understanding of this Court, however, that neither this Order nor our Order of July 13, 1984, which remains in force, precludes the trial court from entertaining and disposing of any post-verdict motions properly before the court prior to sentencing.

**4.** This opinion discusses the issues primarily with reference to appellee Frazier because the comments in question referred only to Frazier. The prosecutor did not characterize or even name Beckman in these remarks. Hence, it follows from our conclusion that Frazier was not prejudiced that Beckman also was not denied a fair trial. Frazier properly raised the issue of prosecutorial misconduct upon which the post-verdict court granted relief. Beckman raised only boilerplate motions before the post-verdict court. In light of the fact that the lower court granted relief to both Frazier and Beckman on the same issue, we have reviewed the issue as to both appellees and deny them both relief.