489 A.2d 900

**COMMONWEALTH of Pennsylvania**

**v.**

**Clair P. MYER, Appellant.**

Superior Court of Pennsylvania.

Argued April 24, 1984.

Filed March 8, 1985.

178

O. Howard Mummau, Manheim, for appellant.

Before McEWEN, CIRILLO and BECK, JJ.

BECK, Judge:

Arthur Conan Doyle might have captioned this appeal "The Case of the Counterfeit Clock." Appellant Clair Myer was convicted of the offense of simulating objects of antiquity or rarity, 18 Pa.C.S. § 4102, in connection with the alteration and sale of an antique grandfather clock. He was sentenced to one year's probation. For the reasons stated below we affirm.

Appellant raises the following issues on appeal:

(1) Whether the court erred in refusing to grant appellant's motion in arrest of judgment on the grounds that the weight of the evidence does not support the verdict;

(2) Whether the court should have granted a new trial because the jury was improperly instructed as to the elements of the offense;

(3) Whether the court erred in denying appellant's requests for evidentiary hearings on ineffective assistance of counsel and on allegedly perjured testimony of the principal Commonwealth witness, and

(4) Whether the court should have granted a new trial because appellant was prejudiced by the prosecutor's improper questioning of a Commonwealth witness concerning his religious belief.

Although appellant's first assignment of error is framed in terms of the weight of the evidence, his contention that the trial court should have granted his motion in arrest of judgment is properly treated as a claim that the evidence was insufficient as a matter of law to support the verdict. In reviewing such a claim, we follow the familiar rule that we must view all the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, and determine whether the evidence so viewed is sufficient for the trier of fact to find each element of the crime charged beyond a reasonable doubt. *Commonwealth v. Rawles*, 501 Pa. 514, 462 A.2d 619 (1983); *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Com-*

*monwealth v. Klimkowicz*, 331 Pa.Super. 75, 82, 479 A.2d 1086, 1089 (1984).

Viewed according to the foregoing standard, the evidence adduced at trial established the following. In 1971 appellant purchased an antique grandfather clock at a house sale in Lancaster County. At the time of purchase, the clock had no indication whatsoever on it of the name of its maker. In 1974, appellant decided to restore the clock. He contacted Mr. Stacy Wood, who was in the business of repairing and restoring antique clocks. Mr. Wood proceeded to work on the clock. In the course of the restoration, the clock was disassembled and Mr. Wood found no maker's name on any part of the clock.

The task of repainting the dial of the clock was referred to Mr. Donald Wendling of Macungie, Pennsylvania. Appellant then met with Mr. Wendling to select a design for the clock dial. Appellant instructed Mr. Wendling to add the name Joseph Eberman to the dial. Joseph Eberman was a noted clockmaker in Lancaster County in the early nineteenth century. Mr. Wendling painted the dial as appellant instructed, but he added the words "repainted August of 1974," "name added" and "D.J.W." on the backside of the dial. This was not done at appellant's request; it was Mr. Wendling's practice when no maker's name was found on the clock. When the clock was reassembled, these inscriptions on the back of the dial were partially obscured. Upon returning the restored clock to appellant, Mr. Wood noted on the bill *"no* name of maker found on plate dial or false plate" (emphasis in original).

On February 14, 1981, appellant placed a classified advertisement in the Lancaster County *Intelligencer Journal* under the classification "Antiques & Reproductions." The advertisement read as follows:

Eight day Joseph Eberman cherry tall case clock, scroll, top moon dial. Thirty hour George Hoff walnut tall case clock, scroll, top. Call 665–3531.

On February 16, Jason Bange of Hanover responded to the advertisement and spoke with appellant on the tele-

phone concerning the "Eberman" clock. Later that same morning, Mr. Bange proceeded to appellant's home, met with appellant, and had a general view of the clock. Appellant stated that the price of the clock was $7,000. Mr. Bange wished to discuss the purchase of the clock with his wife, so he left without the parties reaching an agreement at that time. He returned with his family in the evening. Appellant reaffirmed that the clock was a Joseph Eberman clock. Mr. Bange decided to purchase the clock, and the parties agreed on a price of $6,500.

In order to move the clock to Mr. Bange's vehicle, it was necessary to disassemble it partially. As Mr. Bange and appellant dismantled the clock, Mr. Bange noticed the words "Repainted August of 1974" on the back of the dial. He asked appellant about the inscription. Appellant said it was there when he bought the clock. Mr. Bange did not inquire further into the matter, and he took the clock home.

Shortly thereafter, Mr. Bange learned that the clock he had purchased did not bear the features normally associated with authentic Joseph Eberman clocks. He telephoned District Justice Marilyn Stoner in Lancaster County and expressed his concerns that the clock was not a genuine signed Eberman clock. District Justice Stoner referred the matter to Chief Winters of the Manheim Borough police. Chief Winters and Mr. Bange disassembled the clock, revealing the entire inscription placed on the backside of the dial by Mr. Wendling, including the words "name added" and "D.J.W." Chief Winters then executed a criminal complaint charging appellant with a violation of 18 Pa.C.S. § 4102.

■ Appellant argues that because the Commonwealth could not prove conclusively that the clock was not in fact made by Joseph Eberman, the Commonwealth had not established that the clock "appears to have value because of ... source of authorship which it does not possess," 18 Pa.C.S. § 4102. We disagree. The Commonwealth's expert witnesses testified that it was the presence of the maker's signature itself which added to the value of the clock (N.T.

120, 188–89). Witness Stacy Wood further testified that the clock sold by appellant to Mr. Bange did not bear any features associated with Eberman clocks, and that he "would not attempt to" authenticate the clock as an Eberman clock without the signature. N.T. 119, 136. Finally, Mr. Wood stated that "[i]f we don't know who the maker is I don't believe any name should be on there." N.T. 116. From this testimony, the jury could find that any conclusions as to the origin of the unsigned clock would be speculative at best and that adding a maker's name to the dial of such a clock would create an illusory certainty of origin, thereby increasing the value of the clock, not warranted by the known facts surrounding the clock. This is sufficient to establish that appellant's actions which resulted in the placing of the Joseph Eberman name on the dial caused the clock to appear "to have value because of ... source or authorship which it does not possess."

▮ Appellant further argues that the Commonwealth's case is inadequate because the Commonwealth failed to show that Mr. Bange paid more for the clock than it was worth. This argument is restated later in appellant's brief in the form of a claim that he is entitled to a new trial because the jury was not instructed that it could find appellant guilty only if it found that the reasonable value of the clock was less than $6,500. Appellant's claim is meritless in both contexts. It is not necessary for the Commonwealth to prove that Mr. Bange suffered an actual economic loss or that he was otherwise actually defrauded. The statute requires only that the Commonwealth prove appellant's intent to defraud. *Commonwealth v. Bollinger*, 274 Pa.Super. 112, 418 A.2d 320 (1979). *Bollinger* involved the crime of forgery, defined in 18 Pa.C.S. § 4101. Because the pertinent language in the forgery statute, "with intent to defraud or injure anyone," differs from the corresponding language in 18 Pa.C.S. § 4102 only by the addition of the words "or injure," we believe that our construction of the forgery statute in *Bollinger* may be applied to the crime of simulating objects of antiquity or rarity. In *Bollinger*, we

held that "the law has never required proof that the accused has obtained 'an ultimate profit' in order to establish the fraudulent intent necessary for a forgery conviction." 274 Pa.Super. at 120, 418 A.2d at 324 (citations omitted). Therefore, economic loss to the victim or profit to the accused are not elements of the offense of simulating objects of antiquity or rarity. It was not necessary for the Commonwealth to prove that Mr. Bange paid too much for the clock, and the trial court did not err in instructing the jury.

We further hold that the evidence adduced at trial is sufficient to support a finding of appellant's fraudulent intent. We may look to "the totality of the defendant's conduct" to infer fraudulent intent. *Bollinger*, 274 Pa.Super. at 121, 418 A.2d at 324. Viewed in the light most favorable to the Commonwealth, *see Commonwealth v. Whack*, the evidence revealed that appellant added the name of Joseph Eberman to the clock without any reasonable basis to believe that he was the maker and that appellant concealed the fact of the alteration from the purchaser, Mr. Bange, thereby misrepresenting to Mr. Bange that the clock was "an Eberman clock," i.e. a clock made and signed by Joseph Eberman. From this the jury could infer that appellant intended to mislead others into believing that the clock bore the mark, i.e. the maker's signature, which gave positive evidence of its origin and value.

Next, appellant argues that the court erred in denying his post-trial motions for an evidentiary hearing on the issues of trial counsel's ineffectiveness and allegedly perjurious testimony of the chief Commonwealth witness, Mr. Bange. We find no error in the trial court's actions. Where it is clear from the record that allegations of ineffective assistance of counsel are baseless, no evidentiary hearing is necessary. *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984). Appellant contends that trial counsel acted ineffectively when he failed to impeach Mr. Bange's credibility by questioning him about statements he

allegedly made to appellant outside the courtroom to the effect that he had no grievance against appellant and was testifying only under compulsion.

■ Appellant's brief contains the answer to his own argument. Appellant admits that "the record is clear from the trial that Jason Bange genuinely wanted to avoid testifying against Mr. Myer." Appellant's Brief at 11. As appellant recognizes, trial counsel conducted a thorough cross-examination of Mr. Bange which probed extensively into his reluctance to testify. In connection with this skillful cross-examination, appellant's trial counsel introduced a letter from private counsel retained by Mr. Bange, indicating Mr. Bange's desire not to get involved with prosecuting appellant. Based on this record we cannot find that counsel's action had no "reasonable basis designed to effectuate his client's interests," *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). We will not second-guess counsel's choice of the best avenue of questioning to bring out this particular issue on cross-examination. Since there is no arguable merit to appellant's allegation of ineffectiveness, the trial court properly refused an evidentiary hearing.[1]

■ Appellant's claims with respect to the allegedly perjurious testimony of Mr. Bange essentially amount to a motion for a new trial based on after-discovered evidence

---

1. Appellant also makes several generalized allegations that his trial was tainted by "certain public and political realities" (Appellant's Brief at 12). Among these are appellant's involvement in efforts to oust Chief Winters of the Manheim Borough police, the candidacy of appellant's trial counsel for judicial office, and the fact that the assistant district attorney who handled the trial had opposed appellant's trial counsel in the primary election. These claims are clearly meritless. The prior disputes between appellant and Chief Winters were elucidated and fully explored in their trial testimony, enabling the jury to consider the relations between the two men in assessing their credibility. As for the involvement of appellant's trial counsel and the prosecutor in a judicial campaign, appellant has failed to show how these facts affected the fairness of his trial. Appellant's trial counsel represented his client skillfully and zealously throughout the trial, and appellant has not produced any evidence that the District Attorney's Office of Lancaster County abused its prosecutorial discretion or committed any other impropriety.

and a request for an evidentiary hearing thereon. The legal standard to be applied is well-settled. A new trial will be awarded on the basis of after-discovered evidence only if the evidence in question:

> (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Valderrama,* 479 Pa. 500, 505, 388 A.2d 1042, 1045 (1978). *Accord, Commonwealth v. Johnson,* 291 Pa.Super. 566, 436 A.2d 645 (1981). The after-discovered evidence which appellant claims he has obtained does not meet this standard. The alleged evidence consists of appellant's claim that Mr. Bange, contrary to his trial testimony, was experienced in buying and selling antiques and had more knowledge about antique clocks than he admitted at trial. Citing *Commonwealth v. McCloskey,* 270 Pa.Super. 584, 411 A.2d 1239 (1979), appellant argues that he is entitled to a new trial because his after-discovered evidence directly contradicts Mr. Bange's testimony and proves it false, rather than merely impeaching its credibility. We disagree, finding that *McCloskey* is easily distinguishable. In *McCloskey,* the only witness who linked the defendant to the crimes charged recanted that very testimony under oath and later pled guilty to a perjury charge arising from his false testimony. In the case sub judice, the claimed perjury relates only to collateral matters. The allegedly false testimony of Mr. Bange concerns his expertise as an antique clock buyer. Since proof that the victim was actually deceived or defrauded is not required in a prosecution under 18 Pa.C.S. § 4102, the allegedly false testimony of Mr. Bange is not crucial testimony establishing the elements of the crime. By itself, appellant's new evidence has no probative value with respect to the elements of the offense charged. Therefore, we believe that the evidence is not "of

such a nature and character that a different verdict will likely result if a new trial is granted," *see Valderrama.* At most, allegations of perjury as to collateral matters call into question the credibility of that portion of Mr. Bange's testimony which establishes the elements of the crime. Under the standard of *Valderrama,* impeaching testimony is insufficient to warrant a new trial.

Lastly, appellant contends that a new trial must be granted because the prosecutor improperly questioned Mr. Bange concerning his religious beliefs. During the redirect examination of Mr. Bange, the prosecutor questioned him further concerning the reasons for his reluctance to testify, a matter which had been elicited on cross-examination, and the following colloquy ensued:

Q. Why did you contact an attorney? What is your religion, Mr. Bange?

A. Mennonite.

Q. Why did you contact an attorney about this?

A. Because the church congregation had inquired, the ministry had inquired about the article in the paper as to whether I brought the charges which they, Christian folks don't bring charges against other folks.

Q. And, in fact, this was a police prosecution.

A. I explained that to them but they said that I'm a member of the church and this brings—the church is supposed to remain spotless, that this brings a blemish to the church, that it's unfortunate that my name has to be where it is even though I did not bring the charges.

Q. Thank you.

N.T. 91–92. Appellant bases his claim of error on 42 Pa.C.S. § 5902(b), which provides:

(b) Religious belief may not be shown.—No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility.

This section prohibits the use of a witness' religious belief or affiliation to bolster or impeach his credibility. *See*

*Commonwealth v. Mimms,* 477 Pa. 553, 385 A.2d 334 (1978); *Commonwealth v. Griffin,* 271 Pa.Super. 228, 412 A.2d 897 (1979). Appellant argues that the prosecutor elicited Mr. Bange's testimony that he was a Mennonite to bolster his credibility in two ways: first by showing that his reluctance to testify stemmed from the tenets of the Mennonite faith prohibiting bringing legal proceedings against a fellow Christian rather than any reservations as to the veracity of his testimony, and secondly by capitalizing on the good reputation of Mennonites in the Lancaster County area for truth and honesty.

■ Appellant's argument fails, however, because he did not preserve the issue for appellate review by objecting at trial to the prosecutor's questions about Mr. Bange's religion. Objections to the admission of evidence must be made contemporaneously at trial or the issue is waived. *Commonwealth v. Berrios,* 495 Pa. 444, 434 A.2d 1173 (1981); *Commonwealth v. Hubble,* 314 Pa.Super. 99, 460 A.2d 784 (1983). The contemporaneous objection rule is based on the salutary principle that the trial judge should be given an opportunity to rectify errors at the time they are made. *Commonwealth v. Peterson,* 271 Pa.Super. 92, 412 A.2d 590 (1979).

■ Because 42 Pa.C.S. § 5902(b) prohibits the questioning of a witness about his religious belief as well as the admission of such evidence, the issue raised by the above-quoted testimony may also be viewed as one of prosecutorial misconduct. Indeed, appellant frames the question in those terms in his brief. However, even if the issue is so viewed, appellant still has failed to preserve the issue for appellate review. Failure to make a timely objection to allegedly improper conduct of the prosecutor acts as a waiver of the claim of error. *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Frazier,* 331 Pa.Super. 128, 480 A.2d 276 (1984).

■ Although appellant acknowledges in his brief that trial counsel did not object to the prosecutor's questions, he

inexplicably fails to recognize the significance of this fact. More specifically, appellant makes no claim that counsel's failure to object constituted ineffectiveness justifying an exception to the waiver rule.[2] Consequently, we hold that no relief is available to appellant on this issue because it was not properly preserved for appellate review.

The judgment of sentence is affirmed.

2. Indeed, we note that both appellant's trial counsel and his appellate counsel have attempted to introduce further evidence about Mr. Bange's religious affiliation and his relations with his church. Trial counsel, in his recross-examination of Mr. Bange, continued to inquire into the nature and scope of the restrictions the Mennonite faith imposed on Mr. Bange's conduct. Appellate counsel's supplemental reasons in support of his motion for a new trial lists among the items of after-discovered evidence a claim that Mr. Bange "was disciplined by his church body by a form of excommunication because of his bad reputation for truth and honesty and because of his participation in Defendant's trial."