J-A30015-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIQUE WILLIAM GREEN | : | |
| | : | |
| Appellant | : | No. 1024 WDA 2016 |

Appeal from the Judgment of Sentence June 20, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013385-2015

BEFORE: BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                          FILED APRIL 23, 2018

Dominique W. Green appeals from the judgment of sentence of two years probation and restitution, imposed following his conviction of forgery for uttering a forged writing. After careful review, we reverse.

The pertinent facts underlying Appellant's conviction are as follows. On August 3, 2015, Appellant cashed a check, which was payable to him in the amount of $467.21, and purportedly issued by St. Moritz Labor Services, a temporary staffing company. However, the check was one of eighteen checks payable to eighteen different payees that were duplicates of lawfully issued checks. Appellant never worked for St. Moritz and had no affiliation with that entity.

The company discovered the eighteen fraudulent checks in mid-to-late August of 2015, and Leslie Schattauer, President of St. Moritz initiated a

fraudulent-check investigation with the assistance of Officer Terry Bradford of the Whitehall Police Department. During the course of the investigation, Officer Bradford contacted Appellant and asked to speak to him regarding a check that was cashed.  The officer testified at the non-jury trial that Appellant responded, "[I] only did it once." N.T. Non-Jury Trial, 6/20/16, at 27.  After Officer Bradford advised Appellant of his Miranda rights, Appellant told the officer that he cashed the check at K-Mart because he needed money to pay off fines. Appellant continued that he did not know where the check came from or who sent the check; it came in the mail.  N.T. Non-Jury Trial, 6/20/16, at 29-30.  Appellant confirmed that he never worked for St. Moritz and admitted that he did not have any reason to receive a check from that entity.

At a preliminary hearing on October 27, 2015, the Magistrate Judge found that the Commonwealth had made out a prima facie case on the forgery charge, but dismissed charges of access device fraud and bad checks. On December 14, 2015, the Commonwealth filed a criminal information charging Appellant with forgery in violation of 18 Pa.C.S. § 4101(a)(3), uttering a forged instrument.  Appellant filed a petition for writ of habeas corpus on January 11, 2016, to which the Commonwealth filed a response.  A hearing on the habeas corpus motion was held immediately before the June 20, 2016 non-jury trial, and relief was denied. The case proceeded to trial, and the court found Appellant guilty of forgery under §

4101(a)(3). Appellant was sentenced to probation and restitution, following which he filed a timely post-sentence motion. When his motion was denied, Appellant appealed. The trial court directed him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, he complied, and the trial court authored its Rule 1925(a) opinion.

Appellant presents one issue for our review:

I. To sustain a conviction for forgery requires showing the accused had either (1) an intent to defraud or injure; or (2) knowledge that he is facilitating a fraud or injury. Where Appellant was shown to be one of many who possessed a check from a source that he had no connection with or awareness of, and he negotiated the same for his benefit, was the evidence insufficient to prove that Appellant possessed the requisite mens rea to be convicted of forgery?

Appellant's brief at 4.

Appellant argues that there was insufficient evidence of the requisite criminal intent to sustain the guilty verdict on the charge of forgery. In support of his position, Appellant cites this Court's decision in Commonwealth v. Gibson, 416 A.2d 543 (Pa.Super. 1979), which held that mere possession of a forged check was not sufficient to support a forgery conviction. The Commonwealth counters that the evidence herein was sufficient to sustain the forgery conviction as intent to injure or defraud could be inferred by the totality of the circumstances.

Our standard of review when considering a challenge to the sufficiency of the evidence is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Gause, 164 A.3d 532, 540-541 (Pa.Super. 2017)

(citations and quotation marks omitted).

The law is well settled that:

[g]uilty knowledge (like all culpable mental states) may be proved by circumstantial evidence. Often, intent cannot be proven directly but must be inferred from examination of the facts and circumstance of the case. When examining the totality of the circumstances to determine if there is sufficient evidence from which a jury could infer the requisite mens rea, we must, as with any sufficiency analysis, examine all record evidence and all reasonable inferences therefrom.

Commonwealth v. Newton, 994 A.2d 1127, 1132 (Pa.Super. 2010)

(citations omitted); see also Commonwealth v. Myer, 489 A.2d 900, 904

(Pa.Super. 1985) ("We may look to the totality of the defendant's conduct to

infer fraudulent intent.") (quoting Commonwealth v. Bollinger, 418 A.2d

320, 324 (Pa.Super. 1979)).

Appellant was charged with forgery under 18 Pa.C.S. § 4101(a)(3), which provides:

A person is guilty of forgery if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1)    Alters any writing of another without his authority;

(2)    Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize the act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(3)    Utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S. § 4101(a) (emphases added). Thus, the statute requires that a defendant utter[1] a writing he knew to be forged with intent to defraud or with knowledge that he is facilitating a fraud being perpetrated by another.

Appellant contends that there was no proof that he knew the check was a forgery. He analogizes the facts herein to those in Gibson, supra, and maintains that Gibson controls. In Gibson, the defendant unsuccessfully attempted to cash a personal check, payable to cash, that was endorsed by another person. This Court held that the defendant could

_____

[1] "Utter" is defined as "[t]o put or send (a document) into circulation; esp., to circulate (a forged note) as if genuine <she uttered a counterfeit $50 bill at the grocery store>." Black's Law Dictionary (10th ed. 2014).

not be found guilty of forgery under 18 Pa.C.S. § 4101(a)(3), because the evidence did not prove that he endorsed the check or that he knew that the check was forged. The Commonwealth established that the payor of the check was missing some checks, and that the payor did not sign the check that was made payable to cash. This Court held that these two facts did not support the inference that the defendant signed the check or knew it was forged. We stated, "[t]he evidence just as easily supported the inference that [the defendant] found the check or received it from someone else." Gibson, supra at 545.

Appellant argued herein that, although he endorsed the back of the fraudulent check that was payable to him and negotiated it when he knew he was not entitled to the funds, there was no proof that he knew the check was a forgery. He contends that, as in Gibson, one cannot reasonably infer knowledge that a check is forged from mere possession of a forged check.

The evidence that the check was a forgery was uncontroverted. Leslie Schattauer testified that, "[t]here was a series of checks that were fraudulently using the check numbers that were drawn currently and accurately." N.T. Non-Jury Trial, 6/20/16, at 18. She explained that the formatting and signatures on the checks were not consistent with the company's legitimately issued checks. Id. In addition, some checks contained incorrect bank information and the amounts payable on the checks were significantly higher than St. Moritz's typical payroll checks. Id.

at 18-19. In each case, the payees, including Appellant, were unknown to St. Moritz. Id. at 19-20. Ms. Schattauer testified that the only characteristic of the check at issue that was consistent with checks legitimately issued by St. Moritz was the routing number; the signature and all other formatting components of the check were inconsistent. Id. at 20-21.

Although Ms. Schattauer could readily discern that her company's check was a forgery, the issue is whether the Commonwealth proved that Appellant knew that he was facilitating a fraud by uttering a forged writing. The trial court, sitting as factfinder, based its finding of guilt on the appearance of the check:[2]

> If you look at the check, it's pre-typed, and someone handwrote in Dominique Green. . . . Isn't it peculiar that the stolen check[3] also has all of his information on it as opposed to just a name. It is sent. There was some planning involved, that it would have his name, his address, apartment number, zip code.

N.T. Non-Jury Trial, 6/20/16, at 36-37. In finding Appellant guilty, the trial court concluded:

> if there's no connection, I do not believe this check came in that name. I took a look. You negotiated a $467 check that you know you have no right to. You are either . . . going to harm St.

_____

[2] Unfortunately, although the check was admitted into evidence, neither the original nor a photocopy was placed in the certified record. Hence, we have no check to review.

[3] There was no evidence that the check was stolen. Ms. Schattauer testified that the fraudulent checks bore numbers that were duplicative of duly-issued checks, some contained the actual routing number, but that the formatting and signatures on the forged checks were different than the real checks.

> Moritz, who owns the account, or you are going to harm K-Mart, who cashes the check. . . . The detail on this check, the Defendant's statement I only did it once, in my view indicates that he had awareness that this was not a check that was legitimate. There was some preplanning to put the Defendant's complete information on the check, albeit in the wrong place if you look at the format.

Id. at 43.

In its Rule 1925(a) opinion, the trial court stated the following: "The evidence adduced at trial amply supported the defendant's conviction. . . . The evidence clearly established that the defendant knew the check wasn't legitimate and that he uttered a forged check purporting to appear as though it was authorized by St. Moritz when it was not." Trial Court Opinion, 6/23/17, at 4. The trial court did not credit Appellant's claim that he innocently received the check in the mail. Moreover, with respect to Appellant's statement to Officer Bradford that he "only did it once," the trial court said, "I don't agree that it necessarily means I knew seventeen other checks were done. It may be he was saying, I only did this once as in why, I didn't do that much, but it does -- the interpretation is that he understood his conduct to be not legitimate." N.T. Non-Jury Trial, 6/20/16, at 39.

The Commonwealth argues that Appellant's negotiation of the check when he knew he had no right to the money was sufficient to permit a reasonable inference from the totality of the circumstances that he intended to defraud. We do not disagree. The evidence supported the finding that Appellant knew he was defrauding St. Moritz when he cashed the check and

received funds to which he was not entitled. Appellant may very well be guilty of theft. The Commonwealth also correctly reads § 4101(a)(3) as proscribing the utterance of any writing that is known to be forged, but cites Ms. Schattauer's testimony that the check was forged as satisfying that knowledge element. With that, we disagree. The Commonwealth had to prove beyond a reasonable doubt that Appellant, not Ms. Schattauer, knew that the check was forged in order to convict him under 18 Pa.C.S. § 4101(a)(3). Indeed, that was our holding in Gibson, supra. The Commonwealth must establish not only that the check was forged, but that Appellant knew it was forged.

We find that any inference that Appellant knew the check was a forgery could not fairly be drawn from the evidence. Ms. Schattauer recognized that the check was a forgery due to her experience with payroll checks as the President of St. Moritz. She also testified that employees would recognize the difference between a duly-issued payroll check and the forged check because they would be familiar with the appearance of St. Moritz checks after receiving one.[4] N.T. Non-Jury Trial, 6/20/16, at 23. However, the evidence was uncontroverted that Appellant never worked for St. Moritz or received a genuine St. Moritz payroll check. Since he had no

_____

[4] The Commonwealth did not introduce into evidence a genuine St. Moritz payroll check for purposes of comparison. The only evidence of the appearance of a real check is Ms. Schattauer's verbal description.

familiarity with a legitimate check, one cannot reasonably infer that he would have known simply by looking at the check that it was a forgery.

The trial court did not believe Appellant's statement to police that he received the check in the mail, and cited that fact as the basis for inferring Appellant's intent to defraud. There was no evidence, however, that Appellant forged the check himself or that he inserted his own name on the check as payee.[5] Also absent was any proof that he had a connection to one or more of the other people who cashed similar checks. Nor do we find it reasonable to infer from Appellant's possession of a check to which he was not entitled that he forged the check or made it payable to himself, which is what the factfinder concluded. For these reasons, we find the evidence insufficient to support the forgery conviction.

Judgment of sentence reversed. Case remanded for discharge of Appellant. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

President Judge Emeritus Ford Elliott files a dissenting memorandum.

_____

[5] The trial court, sitting as factfinder, offered no opinion whether the handwritten endorsement on the back of the check was similar in appearance to the handwritten payee's name.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/23/2018