533 A.2d 105

**COMMONWEALTH of Pennsylvania**

v.

**Janet A. BUTLER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 1987.

Filed Sept. 29, 1987.

Reargument Denied Sept. 29, 1987.

454

Robert F. Pappano, Assistant Public Defender, Chester, for appellant.

Joseph J. Mittleman, Assistant District Attorney, Media, for Com., appellee.

Before CIRILLO, President Judge, and McEWEN and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Delaware County following a jury trial. We reverse.

The instant conviction stems from an earlier arrest for prostitution and related charges. Appellant Janet Butler testified in her own behalf at a trial in 1984 where she was subsequently acquitted of the prostitution charges. During the trial, Butler's attorney asked if she had ever been convicted of a crime, to which she responded, "No, sir." Following her acquittal, Butler filed a civil action against a police detective and various other county officials based on an allegedly coercive body cavity search. Shortly after the civil suit was filed, Delaware County authorities discovered that Butler in fact did have a prior conviction for prostitution in the State of Delaware and was in violation of her Delaware probation. She was then arrested and tried for perjury based upon her allegedly false testimony at her 1984 trial. During the course of the trial for perjury, Butler attempted to explain that she was not lying when she stated under oath that she had no prior convictions. She contended that she thought that since an appeal had been taken in the Delaware case, her conviction was not

final. She indicated that she had lost track of her attorney and was unaware of the status of her appeal.

Butler's Delaware probation officer contradicted this testimony. He stated that she had violated her probation and after a June, 1985 hearing, her probation was revoked and she was resentenced to a prison term. He also stated that at the June, 1985 probation revocation hearing, Butler had testified that she was aware since 1982 that her appeal had been denied. This testimony was corroborated by a tape of the hearing.

During the trial, appellant sought to impeach the testimony of Dennis O'Leary, a Delaware County Detective who is a defendant in Butler's civil suit. The detective was called by the Commonwealth to corroborate that Butler had in fact testified under oath that she had never been convicted of a criminal offense. O'Leary also testified that he was the person who had learned of Butler's Delaware conviction and that he had informed the District Attorney's office. Out of the jury's presence, he claimed that it was merely coincidence that this information came to his attention after the civil suit was filed. He stated that he was going through Butler's file sometime in 1985 and noticed a Department of Justice report indicating that she had been arrested in Delaware for prostitution in 1982. O'Leary then investigated the matter, eventually learning of the conviction. He denied that the Department of Justice report had been in her file at the time of the 1984 trial. However, he did admit that such reports are routinely requested at the time of arrest. In this case, according to O'Leary's testimony, the report was not received for at least a year after the initial request. The policeman stated that he was unaware of any other instance where the process took longer than three months. O'Leary also testified that he could not recall why he was looking through Butler's file at the time he noticed the Justice Department report.

Defense counsel wished to show that O'Leary's testimony was biased because he was a defendant in the civil suit. Butler claimed that O'Leary's testimony was naturally

tainted by his position as her adversary in the other proceeding. She also argued that he had a personal interest in the outcome of the perjury trial because if she were convicted of perjury, she would be statutorily precluded from testifying in her civil suit. The trial court's opinion properly rejected this assertion based upon the applicable statute, which states:

> In a civil matter, a person who has been convicted in a court of this Commonwealth of perjury ... shall not be a competent witness for any purpose ... *unless the matter is one to redress or prevent injury or violence attempted, done or threatened to his person or property, in which cases he shall be permitted to testify.* (Emphasis supplied.)

42 Pa.C.S.A. § 5922.

Because of the exception for personal injuries, Butler would not be precluded from testifying. However, the trial court also ruled that the Commonwealth's motivation was not at issue in the perjury trial and therefore, evidence of the civil suit was inadmissible. Butler also attempted, with a similar lack of success, to introduce such evidence to demonstrate prosecutorial vindictiveness.

Following the trial, appellant was convicted of perjury and false swearing. Post-trial motions were filed and denied. Butler was sentenced to three (3) to twenty-three (23) months imprisonment. She then filed this timely appeal.

The sole issue presented for our review is whether the trial court abused its discretion in refusing to allow appellant to introduce evidence of the civil action during the cross-examination of the police detective (Detective O'Leary) for purposes of showing personal bias or interest in the outcome of the trial.

Criminal defendants have a constitutional right to cross-examine witnesses against them. *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). Cross-examination may be used to test a witness' story, to impeach credibility, and to establish the witness' motive for testify-

ing. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 A.2d 347 (1974).

In *Commonwealth v. Ervin,* 262 Pa.Super. 322, 396 A.2d 776 (1978), this court stated that "It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial. *Id.,* 262 Pa.Superior Ct. at 325, 396 A.2d at 777. *See also Commonwealth v. Cheatham,* 492 Pa. 198, 239 A.2d 293 (1968). In *Ervin,* the trial court prevented the defendant from showing, during cross-examination, that there was "bad blood" between the witness (the victim) and the defendant. This court held that the defendant was deprived of his right to inquire into the possible prejudice or bias of the witness, and found this to be reversible error. *Ervin,* 262 Pa.Superior Ct. at 325, 396 A.2d at 777.

In *Commonwealth v. Robinson,* 507 Pa. 522, 491 A.2d 107 (1985), our supreme court reiterated this well settled rule. In *Robinson,* co-defendants Douglas Robinson and Rebecca Coleman shared an apartment in a building owned by Debra Carolina. The parties were involved in a bitter rent dispute during the course of which Robinson and Coleman accused Carolina of stealing from them, Carolina turned off their utilities, and the tenants withheld payment of rent. Carolina was also convicted of aggravated assault for throwing lye on Coleman. Because of this ongoing dispute, Robinson and Coleman moved out of the apartment. Carolina claimed that she saw them steal various items from her apartment before they left. She filed charges with the police causing Robinson and Coleman to be arrested and prosecuted. At trial, the pair claimed that they had never taken anything from Carolina's apartment and had not even been in the vicinity on the day in question. They sought to impeach Carolina's testimony by bringing out proof of the various incidents described above for the purpose of showing that Carolina had a motive to fabricate the charges. The trial court refused to allow cross-examination as to any of these areas. On appeal, the Pennsylvania Supreme Court reversed, holding that a criminal defend-

ant has the right to cross-examine a witness for the purpose of demonstrating that the witness has a motive to give false testimony. The court stated that the disallowance of such questioning is particularly prejudicial in cases which hinge on credibility. *Id.*, 507 Pa. at 528, 491 A.2d at 110.

However, in *Commonwealth v. Ross*, 345 Pa.Super. 571, 498 A.2d 972 (1985), defendant Ross was convicted of raping a twelve year old girl. At trial, Ross's attorney sought to cross-examine the victim to determine if she had fabricated her story to get attention. The trial court refused to allow this line of questioning. On appeal, a panel of this court affirmed, holding that though a witness may be cross-examined to show bias or interest, the scope of that examination is within the discretion of the trial judge. In *Ross*, the defendant's counsel admitted that he had no evidence to substantiate his allegation that the girl was attempting to gain attention through her story. *Id.*, 345 Pa.Superior Ct. at 574, 498 A.2d at 973. Thus, a trial judge may limit cross-examination as to motive if the attorney is admittedly engaged in a fishing expedition.

■ In this case, Butler's attorney was not engaged in a fishing expedition based merely on surmise, conjecture and hope. He was pursuing well substantiated matters in order to attack O'Leary's credibility. Counsel wished to show that the detective had a motive to lie. Even if Butler could not be statutorily precluded from testifying at her civil trial, O'Leary certainly may have been motivated by personal animus arising out of appellant's suit against him.

The importance of credibility in this matter is underscored by the very reason O'Leary was called to testify The "two witness" rule states that a conviction for perjury cannot rest on the uncorroborated testimony of a single witness. *Commonwealth v. Katafanas*, 318 Pa.Super. 143, 166, 464 A.2d 1270, 1282 (1983). Detective O'Leary's testimony was necessary to corroborate that of Danette Caveliere, the court reporter who transcribed the notes of testimony of the 1984 prostitution trial. The purpose of the rule is to protect a defendant from honest mistakes or harassment.

*Id.* This purpose is hardly served if the corroborating party is biased making their testimony unreliable. Thus, O'Leary's credibility is important in this case much like the situation in *Robinson.* Similarly to *Ervin,* O'Leary's testimony may have been tainted by the "bad blood" between he and appellant. The trial court erred in limiting Butler's cross-examination of the policeman on the issue of bias.

This error was compounded during the trial judge's charge to the jury: "You should consider whether the witness has anything to gain or lose from the outcome of the case.... In weighing the testimony, however, you may consider the fact that [appellant] has a vital interest in the outcome of this trial. You may take the [appellant's] interest into account just as you would the interest of any other witness along with all the other facts and circumstances bearing on credibility in making up your minds what weight the testimony deserves."

This instruction emphasized the importance of each witness' credibility. The trial judge pointed out that Butler's own testimony might not be credible because of her obvious self-interest. Yet the jury was left with the impression that it was only Butler whose credibility may have been at issue. Not only did the court restrict the cross-examination of O'Leary, it instructed the jury in a manner designed to reinforce the impression that the witnesses other than Butler were impartial and unbiased. The court allowed O'Leary to hide his bias and then, de facto, pronounced him a credible witness. The court's failure to allow the cross-examination at issue constitutes reversible error.

Appellant also argues that the trial court erred in precluding evidence concerning her civil suit because it was relevant to the issue of "prosecutorial vindictiveness."

In our criminal justice system, prosecutors have broad discretion as to whom to prosecute. *United States v. Goodwin,* 457 U.S. 368, 380, 102 S.Ct. 2485, 2492, 73 L.Ed.2d 74 (1982); *Goodman v. Kennedy,* 459 Pa. 313, 329 A.2d 224 (1974). "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute,

and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

Courts have long recognized that the charging function is uniquely within the competence of the prosecutor and is particularly ill-suited for judicial review. The strength of the case, its deterrence value, and its importance in relation to other criminal matters and the Government's crime-fighting resources are all best judged by the prosecutors whose jobs entail making these decisions. Judicial micro-management of this area would be cumbersome and inevitably lead to delay and inefficiency.

Though the government enjoys wide discretion in making its prosecutorial decisions, that authority is not unfettered. As the Supreme Court has stated: "Selectivity in the enforcement of criminal law is ... subject to constitutional constraints." *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979).

Under the equal protection clause of the Fourteenth Amendment of the United States Constitution, the government must afford similarly situated persons similar treatment. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Thus, the government may not prosecute someone based upon race, religion or another unjustifiable classification. *Bordenkircher* 434 U.S. at 364, 98 S.Ct. at 672. Nor in retaliation for the exercise of protected statutory and constitutional rights. *Goodwin* 457 U.S. at 372, 102 S.Ct. at 2488. *See also Thigpen v. Roberts*, 468 U.S. 27, 30, 104 S.Ct. 2916, 2918, 82 L.Ed.2d 23 (1984). Similarly, it is unconstitutional for the government to prosecute an individual because the prosecutor has a personal animus against the defendant. *United States v. DeMichael*, 692 F.2d 1059, 1061 (7th Cir.1982).

▪ Because it is constitutionally repugnant, selective prosecution constitutes a valid defense to a criminal charge. In order to establish a case of prosecutorial vindictiveness, the defendant must prove that: (1) others who are similarly situated to the defendant are not generally prosecuted for

similar conduct; and (2) the defendant has been intentionally and purposefully singled out for prosecution for an invidious reason. *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985).

In *Wayte,* a young man who was required to register with the Selective Service System failed to do so and notified government officials that he was not going to register in the future. The government warned him that he would be prosecuted but he continued to refuse to register It was government policy to prosecute only those persons who notified their respective draft board that they would not register. The government claimed that it used such notification to identify non-registrants, thereby saving resources which otherwise would be devoted to investigation. The District Court dismissed the indictment on the grounds of selective prosecution. The court concluded that Wayte was prosecuted because he had spoken out in opposition to the Draft. The Court of Appeals reversed and the Supreme Court affirmed the circuit court. The Court held that the government's policy of prosecuting only those individuals who protest registration did not amount to "selective prosecution." The Court ruled that the policy may have had a discriminatory effect but there was no showing of discriminatory purpose. *Id.* at 610, 105 S.Ct. at 1532. The Court stated that discriminatory prosecution requires more than "awareness of consequences." A defendant must show that he was selected for prosecution because of an unjustifiable reason. *Id.* Wayte demonstrated that the government prosecuted those individuals who notified the authorities that they would not register. This was the means of selection but it was not the reason. The government actually attempted to convince such persons to register so it would not have to prosecute.

■ In this case, Butler claims that Delaware County prosecuted her for perjury because of her civil suit which is based upon an allegedly unconstitutional search. Certainly, the proximity in time between the filing of the civil suit and Detective O'Leary's re-awakening of interest in Butler's case has a suspicious air. It is also suspicious that O'Leary

mysteriously found a Justice Department report in Butler's file soon after she filed her civil suit. As noted, the detective claimed that he had never before seen this report, as it was not in the file prior to Butler's original trial. However, O'Leary agreed that based upon the time frame in which such reports are routinely forwarded, it should have been in the file at that time.

It is arguably logical that the County re-investigated Butler and dredged up previously ignored information in retaliation for her lawsuit. The effect was then to single out Butler. The purpose was to retaliate for her exercise of protected constitutional rights. Unlike the defendant in *Wayte*, Butler's allegations do make out a prima facie case of selective prosecution. She has asserted both discriminatory effect and discriminatory purpose.

Prosecutorial discretion is an awesome power which our society necessarily vests in certain trusted public servants. Those persons may destroy lives and cause financial ruin by virtue of a mistaken judgment. An innocent person who has been charged with a crime may be found not guilty but nonetheless find their life shattered. An individual of ordinary means must deplete their entire net worth to defend against the limitless resources of the government. A lifetime of work and thrift will be extinguished whether the person is innocent or not. The individual's name will be forever muddied. The community remembers the charge, not the acquittal.

Though the vast majority of prosecutors are dedicated and able public servants who would never misuse their tremendous power, our legal system strives to prevent even the occasional injustice. Thus, the defense of selective prosecution provides a check upon the arbitrary exercise of governmental power. When all else has failed, an individual victimized by governmental wrath is still protected by judicial vigilance.

Because her claims have arguable merit, the trial court should have held an evidentiary hearing and given Butler the opportunity to present her defense. *Commonwealth v. Contakos*, 492 Pa. 465, 472, 424 A.2d 1284, 1288 (1981).

Based on the foregoing, the judgment of sentence of the Court of Common Pleas of Delaware County is reversed and remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

McEWEN, J., concurs in result.

TAMILIA, J., files a dissenting statement.

TAMILIA, Judge, dissenting:

I respectfully dissent. The majority, in its well reasoned Opinion, makes out a case that is not before the Court. The issue of the police officer's credibility or bias are collateral to the charge of perjury against the appellant. Appellant was acquitted of criminal charges after trial, during which she falsely alleged she had never been convicted of a crime. The perjured statement was on record and simply had to be corroborated by persons present at the time the statement was made. Bias or collateral civil actions involving the appellant and the police had no bearing on whether or not the appellant made the statement. The police officer's credibility could not be attacked for those extraneous considerations. I would affirm the jury verdict.