553 A.2d 1006

**COMMONWEALTH of Pennsylvania**

**v.**

**David MEADOWS, Appellant.**

Superior Court of Pennsylvania.

Argued June 21, 1988.

Filed Feb. 6, 1989.

Kimberly M. Preston, Assistant Public Defender, West Chester, for appellant.

Nicholas J. Casenta, Jr., Assistant District Attorney, Downingtown, for Com., appellee.

Before MONTEMURO, BECK and POPOVICH, JJ.

POPOVICH, Judge:

David Andrew Meadows was tried before a jury in the Court of Common Pleas of Chester County and convicted of rape, indecent assault and corruption of minors. 18 Pa.C. S.A. §§ 3121, 3126, 6301. Following the denial of post-trial motions, he was sentenced to five to ten years imprisonment, and this appeal followed. We affirm.

In this direct appeal from his judgment of sentence, the appellant contends that the evidence against him was legal-

ly insufficient to support the convictions for rape and indecent assault. He also contends that the lower court erred in refusing to grant his motion for a mistrial on the following grounds: 1) the prosecutor was erroneously permitted to question the appellant on his post-arrest silence and comment on the silence in his closing argument; 2) a counselor from the Crime Victims' Center was erroneously permitted to console the victim while she was on the witness stand in view of the jury; and 3) the prosecutor was erroneously allowed to admit into evidence the victim's blood-stained panties. Finally, he contends that he was deprived of a fair trial when the judge gave erroneous instructions to the jury.

The facts of the case are as follows: In 1986, when the appellant was twenty-three years of age, he became acquainted with the complainant, Becky M. Becky was the younger sister of the appellant's brother's girlfriend. She was fifteen years of age and was deaf. The appellant visited Becky at her parents' home on six or seven occasions during a three-month period. Becky developed a strong attachment to appellant and considered him to be her boyfriend. N.T. 11/3/86 at 29. She looked forward to his visits and tried to teach him some sign language.

On June 8, 1986, Becky and the appellant met behind a barn located on her parents' property and voluntarily engaged in petting activities. After they were interrupted by Becky's sister, they left the barn and walked for five minutes until they came to a nearby dirt field. N.T. 11/3/86 at 43. Becky kissed the appellant and voluntarily laid down on the ground. The appellant maintains that, thereafter, he had consensual sexual intercourse with Becky and that Becky did not object or protest in any way. However, at the appellant's preliminary hearing, Becky testified that while the appellant was pulling down her zipper, she said aloud, "No." and "Off." N.T. 11/3/86 at 60. At trial, Becky provided additional details. She testified through an interpreter as follows:

Q. What did you say to Dave when he had sex with you there?

A. I said: Why you have sex? I don't want any.

Q. And what did you say when he pulled your pants down?

A. I said: Why are you pulling my pants down.

Q. What did you say when he put his penis into your vagina?

A. I said: I—I don't—he said he wanted to have me pregnant.

N.T. 11/3/86 at 59.

Becky also said that she pushed hard against the appellant but could not move his body off hers. N.T. 11/3/86 at 12.

After the act of intercourse was completed, the couple returned to Becky's parents home. Becky admitted that she again kissed the appellant, but she said that she was now afraid of him. N.T. 11/3/86 at 25, 52. The following day, Becky arranged an appointment with a school nurse. She told the nurse that a boy named Jimmy had forced her to have sex and that she thought she was pregnant. After speaking to the police, Becky said that, in fact, the appellant had forced her to have sex.

In November, 1986, the appellant was tried before a jury on charges of rape, indecent assault, and corruption of minors. After retiring for deliberations, the jury returned with two questions for the judge concerning the definition of the crime of rape. According to the Pennsylvania rape statute, "A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse ... by forcible compulsion...." 18 Pa.C. S.A. § 3121. The jury foreman asked the judge to define "forcible compulsion".[1] The foreman also asked the judge, "Can Becky consent to a point and then say no? (Prior to the act) In other words, can she consent 95 percent and just prior to intercourse say: No, no. Off, off. Is this forcible compulsion.?" N.T. 11/6/86 at 72. Defense coun-

1. The jury also asked the judge to define the term "indecent assault".

sel's position was that the court should respond to these questions by defining "forcible compulsion" as the use or threatened use of physical force or violence. The trial court, however, noted that in the case of *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), the Pennsylvania Supreme Court had held that psychological, moral, and intellectual force can also rise to the level of "forcible compulsion." Over defense objection, the Court read excerpts from the *Rhodes* case to the jury and then made the following comments:

> It is up to you as the jury to take what I have just read to you, consider everything to determine whether you have forcible compulsion of the various types; whether it was physical—and you have to keep in mind what the evidence was with regard to any physical coercion, with regard to moral, intellectual, or psychological. The essence of the offense is that there was some exercise of conduct on the part of the Defendant that was against the will of the victim in this case, Miss [M.]. And I can do no more that tell you that the Supreme Court says it's one of four varieties at this point in time.
>
> And, again, the Court tells you to look at all of the circumstances that were occurring that day from—and I say to you you should look from the time Mr. Meadows arrived until the time that they were in the field and what was occurring and to distill those facts and ask yourself: Is it physical force; is it moral; is it intellectual; is it psychological? And I can give to you no more guidance than that.

N.T. 11/6/86 at 75–76.

The jury then convicted the appellant of all charges. On November 11, 1987, he was sentenced to a mandatory minimum five year term of imprisonment for rape. The judge determined that the convictions for indecent assault and corruption of minors merged with the rape conviction.

■ The appellant contends on appeal that there is insufficient evidence of rape and indecent assault. We disagree. When reviewing a sufficiency of the evidence claim, we

must view all of the evidence in the light most favorable to the Commonwealth, and resolve all conflicts in the evidence in favor of the Commonwealth. *See, e.g., Commonwealth v. Pearsall,* 368 Pa.Super. 327, 329, 534 A.2d 106, 108 (1987). As appellant concedes, a defendant is clearly guilty of rape if he has sex with another person who is not his spouse through the use of physical force or violence. Moreover, a defendant is guilty of indecent assault if he has indecent contact with another person who is not his spouse without that other person's consent. 18 Pa.C.S.A. § 3126. Viewing the evidence in the light most favorable to the prosecution, a jury could find that appellant pinned Becky to the ground and knowingly disregarded her efforts to communicate the idea that she did not want to have intercourse. Accordingly, we find that the trial court was correct in denying appellant's motion in arrest of judgment.

Next, we will discuss the appellant's opposition to the trial court's denial of his motion for a mistrial. "The decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. *Commonwealth v. Hamm,* 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984); *Commonwealth v. Seigrist,* 253 Pa.Super. 411, 418, 385 A.2d 405, 408 (1978)." *Commonwealth v. Thomas,* 361 Pa.Super. 1, 14, 521 A.2d 442, 449 (1987), allocatur denied 516 Pa. 617, 532 A.2d 1119. Moreover, when prompt curative or cautionary instructions are given by the court, an abuse of discretion will not readily be found. *Commonwealth v. Hoffman,* 301 Pa.Super. 312, 316, 447 A.2d 983, 985 (1982); *Thomas,* 521 A.2d at 449; *Seigrist,* 385 A.2d at 409. "A mistrial must be granted 'only when [the prejudicial effect of] an incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial.' *Commonwealth v. Hernandez,* 498 Pa. 405, 415, 446 A.2d 1268, 1273 (1982)." *Commonwealth v. Chestnut,* 511 Pa. 169, 176, 512 A.2d 603, 606–607 (1986).

With the aforementioned standards in mind, we will review the appellant's assertions of error concerning his

motion for a mistrial. First, the appellant asserts that error was committed when the prosecutor was permitted to cross-examine on his post-arrest silence and comment in the closing argument on his silence. A careful review of the transcripts clearly reveals that the complained of cross-examination and references in the prosecutions closing argument did not refer to the appellant's Fifth Amendment rights.

The appellant grounds his allegation in the following testimonial excerpt from his cross-examination:

Q. Sir, when you were asked by the police whether you had sex with Becky [M.], you said no; correct?

A. That's true.

Q. That was a lie; correct?

A. Yes, it was.

Defense: Objection, Your Honor. He already went through this.

Court: The objection is overruled.

N.T., 11/6/86, p. 108.

\* \* \* \* \* \*

Q. Sir, when you found out your pubic hairs had been matched to the underwear in front of you, that Jimmy Lansidal's hadn't, that's the first time you said you had sex; correct with Becky [M.]?

A. That's the first that I had said? That's the—I'd imagine that's about the time.

Q. That's about the time you started telling people about this; correct?

A. I don't remember when I said it.

Q. You didn't tell the police officers the sex was consensual; right?

A. No, I didn't.

Q. You didn't tell the District Attorney's Office or any investigative body the sex was consensual; right?

Defense: Your Honor, objection. We have been over this ground already.

Prosecution: I never asked this question before.

Court: I am going to permit you to go a little longer, Mr. Carmody, but I think you have been over this ground.
Prosecution: This will be the final. I will wind it up here, Your Honor.

Q. You didn't tell the District Attorney's Office or anybody else about this, did you?

A. No, I didn't.

Q. You lied, sir, when you thought it could help you, correct?

A. No, that's not true.

Q. It was only when you were trapped by the physical evidence in front of you is when you told us, this jury, that the sex was consensual?

A. No, sir, that is not true.

N.T., 11/6/87, p. 110–111.

After reviewing this testimony, it is abundantly clear to this court that the prosecution was not commenting upon the appellant's right to remain silent but rather was highlighting the appellant's prior contradictory statements as relevant an indication of appellant's guilt. It is well established Pennsylvania law that "false or contradictory statements by the accused are admissible since the jury may infer therefrom that they were made with an intent to divert suspicion or to mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of [consciousness of] guilt." *Commonwealth v. Bolish*, 381 Pa. 500, 524, 113 A.2d 464, 476 (1955); *Commonwealth v. Boyle*, 498 Pa. 486, 497, 447 A.2d 250, 255–56 (1982); *Commonwealth v. Calloway*, 313 Pa.Super. 173, 181, 459 A.2d 795, 799 (1983). Moreover, the cross-examination is consistent with an effort by the Commonwealth to impeach the appellant's credibility through the use of prior inconsistent statements. See *U.S. v. Agee*, 597 F.2d 350 (3rd Cir., 1979) (questioning on silence distinguished from relevant questioning on prior false statements given to police); *U.S. v. Franklin*, 586 F.2d 560 (5th Cir., 1978) (post-arrest silence not at issue when prosecution impeaches by use of prior inconsistent statements given to police).

Thus, the prosecutor's questioning did not impermissibly elicit evidence of the appellant's post-arrest silence; rather, the cross-examination was directed at the appellant's prior contradictory statements. We find that the trial court did not abuse its discretion in denying the appellant's motion on the ground of prosecutorial misconduct.

We reach the same result when we consider the appellant's allegation concerning the prosecution's closing argument which reads as follows:

This defendant lies to the police and says: No, there is no sex; none of that big time stuff, you know.

Mr. Sanchez in his opening goes: Well, in his statement he admitted everything but the sex.

What did he admit? He had to admit it. And, I put on evidence of Joann seeing them behind the rabbit pen, of Dot Lichte seeing them in the street, the mother seeing— Susan M. seeing them on the street. He's seen with Becky. He's pinned to the scene. So, he had to admit that.

But he's not—doesn't have to admit the sex until we physically trap him with physical evidence. His pubic hairs were in there. Actually, Jimmy Lansidal's weren't. He was trapped by the physical evidence. He had to change his story. He had to change his defense.[2]

**2.** The Commonwealth, in its brief, states "At the time the Commonwealth's brief was filed, the prosecutor's closing argument still had not yet been transcribed. However, that part of the prosecutor's closing argument that defendant alleged as error was transcribed and it consists of a one page transcript dated November 6, 1986." Brief p. 16, n. 7. Presently, the prosecutor's closing statement does *not* appear in the record, neither in fully transcribed form nor the one page excerpted transcript. Since both parties agree to the text in dispute, we will review the argument.

We note that allegedly improper comments in the prosecutor's closing argument must be evaluated in their full context including the defense's closing argument. *Commonwealth v. Frazier*, 331 Pa.Super. 128, 134, 480 A.2d 276, 279–280 (1984). Since a full context evaluation is not possible presently, we could refuse to review this issue. *Commonwealth v. Dobson*, 302 Pa.Super. 57, 59, 448 A.2d 92, 94 n. 2 (1982). However, as this issue is easily resolved pursuant to our discussion of the cross-examination of the appellant, we will dispose of this issue.

It is obvious that the prosecution's closing argument was proper for the same reason that the cross-examination was proper. The prosecutor was merely highlighting the contradictory statements the appellant made at the time of his arrest and subsequently. Pennsylvania courts have consistently held that "a prosecutor may make remarks on the evidence presented to a jury which point out any legitimate inference which may be drawn from the evidence." *Commonwealth v. Nenninger*, 359 Pa.Super. 444, 453, 519 A.2d 433, 438 (1986); *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Frazier*, 480 A.2d 276. Upon review, we are limited to determining whether the trial court abused its discretion in determining whether the unavoidable effect of the argument was so prejudicial as to prevent the jury from weighing the evidence objectively and rendering a true verdict. *Commonwealth v. Adams*, 362 Pa.Super. 549, 557, 524 A.2d 1375, 1379 (1987) (citing cases).

In *Nenninger, supra,* the appellant objected to the prosecutor's suggestion to the jury that the appellant's only defense to a rape charge was that of consent because he was aware of the medical reports the type of sexual contact described by the victim. That appellant alleged the remarks were erroneous since they implied that he had fabricated his story to explain the evidence. After finding the central issue to be whether the sex was consensual, we held that "it is reasonable for each side to imply prevarication on the part of the other." *Nenninger*, 519 A.2d at 437. Similarly under the present facts, it was entirely reasonable for the prosecution to highlight the fact that only after the appellant's pubic hair was found in the victim's panties did the appellant claim to have consensual sex with Becky.

We find the issue of whether the prosecution erroneously commented on the appellant's post-arrest silence is meritless since the prosecution clearly did not make any reference to the appellant's post-arrest silence. Moreover, even assuming *arguendo* that the closing was prejudicial, it certainly was not sufficiently prejudicial to prevent the jury from rendering a true verdict. Thus, we cannot find that

the trial judge abused his discretion in denying the motion for a mistrial.

■ The appellant second attack on the court's denial of his mistrial motion concerns the prejudicial effect of a rape counselor's act of comforting the victim while she was on the witness stand. The appellant contends that "a conversation between the counselor for the Crime Victim Center of Chester County and the victim exacerbated the testimony of an extremely sympathetic dead [sic] mute witness." Brief, p. 17. We must disagree.

Instantly, the trial judge adjudicated the issue as follows:

On both occasions there had been side bar conferences with counsel and a decision to adjourn to an adjacent room for further discussion. No one explained to the deaf mute witness what was happening, and it was obvious that she was confused and concerned by the sudden departure of the attorneys and myself and was looking to the people with whom she was familiar for some advice. There was nothing impermissible in the witness assistance personnel going up and talking to the victim. Furthermore, I instructed the jury not to allow any sympathy because of the victim's handicaps to play any role in their decision in this case. (N.T. 11/3/86 p. 19, 24). "Prompt and adequate cautionary instructions can cure what might otherwise be reversible error." *Commonwealth v. Gbur*, 327 Pa.Super. 18, 24, 474 A.2d 1151, 1154 (1984). Thus the instructions given to the jury regarding the victim's handicaps allayed any possible prejudice to the Defendant with regard to whose testimony was more credible.

Trial Court Opinion, p. 9.

Instantly, we are unable to find that the trial court's denial of a mistrial was an abuse of discretion. Clearly, there is nothing impermissible with a witness conversing with a friend while court is adjourned. If we were to rule that a deaf mute victim could not converse in front of a juror simply because he or she had to communicate through sign language, we would be guilty of nothing less than

discrimination. While the complained of conversation is factually unusual, the trial court certainly "allayed any possible prejudice to the Defendant" through a cautionary instruction. Moreover, it is entirely probable that the counselor's conversation prevented any prejudice which may have occurred had the victim become visibly distraught because of her confusion when the attorneys and judge left the courtroom without explanation.

The appellant's third attack on the trial court's denial of his mistrial motion alleges that the court erroneously admitted into evidence the victim's blood-stained panties. The admission or exclusion of evidence is a matter specifically within the discretion of the trial judge, and we will not reverse his decision absent an abuse of that discretion. *Commonwealth v. Ford*, 451 Pa. 81, 85, 301 A.2d 856, 858 (1973); *Commonwealth v. Grove*, 363 Pa.Super. 328, 346, 526 A.2d 369, 379 (1987), allocatur denied, 517 Pa. 630, 539 A.2d 810; *Commonwealth v. Johnson*, 340 Pa.Super. 26, 30, 489 A.2d 821, 823 (1985). "The test to be applied in determining the admissibility of such evidence involves weighing the inflammatory nature of this evidence against its 'essential evidentiary value.' *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747, 750 (1977) (citing cases)." *Commonwealth v. Pifer*, 284 Pa.Super. 170, 180, 425 A.2d 757, 762 (1981).

▆▆▆ Again, we find that the appellant's assertion of error is without merit. Firstly, as the trial court found, the panties were relevant to show that sexual intercourse did occur. Secondly, the presence of dried blood on a piece of evidence does not necessarily render the evidence inflammatory. *Pifer*, 425 A.2d at 762–763. Thirdly, even assuming *arguendo* that the blood-stained panties were prejudicial, the trial judge removed any possible prejudicial effect through a cautionary instruction prior to the admission of the panties. *Hoffman*, 447 A.2d at 985.

▆▆▆ Finally, the appellant contends that the trial court erred in charging the jury consistent with *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). After a

specific request by the jury for an instruction defining "forcible compulsion," the trial court instructed the jury in compliance with *Commonwealth v. Rhodes, supra.* Instantly, the appellant specifically objects to that portion of the instruction which defined "forcible compulsion" to include "not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Commonwealth v. Rhodes,* 510 A.2d at 1226.

In *Commonwealth v. Rhodes,* the twenty year old defendant lured an eight year old girl to a room on the second floor of an abandoned building and ordered her to submit to sexual intercourse and anal sex. A divided panel of the Superior Court reversed the defendant's rape conviction on the grounds that there was insufficient evidence that he had used physical force. Upon further appeal, the Supreme Court held that the defendant's use of psychological, moral, and intellectual pressure against the child rose to the level of "forcible compulsion". Citing the dissenting opinion of Judge Cavanaugh in the Superior Court, the Justices noted that "the illicit commands of this twenty year old [man] in an isolated and abandoned room were ... an imperative which gave the [eight year old] child victim no alternative but submission to appellant's corrupt scheme." 510 A.2d at 1217 (citing 332 Pa.Super. 273, 281, 481 A.2d 610, 614 (1984)) (parenthetical language added by Supreme Court).

The trial judge viewed the case *sub judice* as analogous to *Rhodes.* The trial court opinion states:

The *Rhodes* rationale does apply to the instant case in that the victim was psychologically vulnerable to the Defendant just as the *Rhodes* victim was. The victim in the case before us is a deaf mute, fifteen years of age and the Defendant is twenty-three years of age. In addition the victim had an adolescent crush on the Defendant and the Defendant was aware of her feelings for him. Furthermore, the sexual intercourse took place in a secluded field. The circumstances of this case show that psychological coercion existed and under the *Rhodes*

analysis such coercion is sufficient to meet the requirement of forcible compulsion.

Trial Court Op. at 6.

In a recent decision, *Commonwealth v. Holland,* 518 Pa. 405, 543 A.2d 1068 (1988), our Supreme Court set forth the standard used when adjudicating whether a trial court had grounds for instructing the jury on a certain matter.

It is axiomatic that a jury need not be instructed regarding matters that have no relevance to the evidence introduced at trial. As stated in *Commonwealth v. Whiting,* 409 Pa. 492, 498, 187 A.2d 563, 566 (1963), "There is no duty on a trial judge to charge a jury upon a law which has no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial: *Commonwealth v. Coleman,* 402 Pa. 238, 166 A.2d 525 (1961)." See also *Commonwealth v. Tervalon,* 463 Pa. 581, 593, 345 A.2d 671, 678 (1975); *Commonwealth v. Bighum,* 452 Pa. 554, 559, 307 A.2d 255, 258 (1973); *Commonwealth v. Heckathorn,* 429 Pa. 534, 540, 241 A.2d 97, 100 (1968) ("A charge on a point or issue which is unsupported by any evidence is likely to confuse the jury and obstruct Justice.")

*Commonwealth v. Holland, supra,* 543 A.2d at 1071.

Here, we must ask upon review whether "some relationship" between the jury instruction on "forcible compulsion" and the evidence exists. If any evidence of "forcible compulsion" of a psychological, moral or intellectual nature appears in the record, then the trial court's instruction was not erroneous.

Our Supreme Court did not qualify its definition of "forcible compulsion." Rather, the Court defined "forcible compulsion" for all cases, setting forth a jury question of whether forcible compulsion of a physical, psychological, moral or mental nature occurred. In *Commonwealth v. Rhodes, supra,* 510 A.2d 1217, our Supreme Court explained that:

The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion ... is, of course, a determination that will be made in each case based upon the totality of circumstances that have been presented to the fact finder. Significant factor to be weighed in that determination would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of factors is by no means exclusive.

*Commonwealth v. Rhodes, supra,* 510 A.2d at 1226.

This record reflects the following evidence of "forcible compulsion" of psychological, moral or intellectual force. The appellant was twenty-three years of age at the time of the rape. The victim was only fifteen years of age. The victim was deaf. The record clearly reveals that the victim had difficulty communicating with the appellant. The record also shows that the victim had an "adolescent crush" upon the appellant, and the rape occurred in a secluded spot where the victim could not alert help. After a specific request for instruction by the jury, the trial court's instruction correctly framed the issue for the jury's consideration. We, therefor, hold that the instruction was not misleading and reversible error did not occur. In fact, the instruction was necessary to answer the jury's question concerning "forcible compulsion."

In sum, we find that the appellant's assertions of error are without merit. Firstly, the evidence was sufficient to sustain the appellant's conviction of the charge of rape. Secondly, the trial court did not abuse its discretion in denying the appellant's motion for a mistrial since the Commonwealth did not make impermissible reference to the appellant's post-arrest silence, the appellant was not preju-

diced by the crime victims' counselor comforting of the victim and the appellant was not prejudiced by the admission of the victim's blood-stained underwear. Further, the trial court gave cautionary or curative instructions when necessary. And thirdly, the trial court correctly instructed the jury on the issue of forcible compulsion as defined in *Rhodes, supra*. Accordingly, judgment of sentence is affirmed.

Judgment of sentence is affirmed.

BECK, J., concurs in the result.