582 A.2d 655

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Eugene DAY, Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 1990.

Filed Sept. 21, 1990.

Reargument Denied Nov. 27, 1990.

Paul M. George, Asst. Public Defender, Philadelphia, for appellant.

Eric Schoenberg, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before BECK, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County. After a careful review of the parties' briefs and the applicable law, we affirm.

The record indicates that sometime prior to April 24, 1987, the appellant Eugene Day was charged with receiving stolen property and theft. Julius Williams, the victim in the instant case, was scheduled to testify against Day regarding those charges. According to Williams, Day threatened him during the time that the charges were pending. N.T., May 3, 1989, at 45–81.[1] Williams testified that Day frightened him with promises of bodily harm and repeatedly stated that he was going to "get him." *Id.* at 47. Day denied these allegations. N.T., May 4, 1989, at 139–153.

Day was tried for receiving stolen property and theft on July 30, 1987. He was acquitted of both charges. That same day, he was arrested and charged with terroristic threats and intimidation of a witness. Following a jury trial, Day was convicted of making terroristic threats. He was acquitted of the charge of intimidating a witness. Post-trial motions were denied. Day was sentenced to three years probation. This appeal followed.

Day raises two issues for our review: (1) whether the trial court erred in limiting the admissibility of certain evidence from Day's first trial and (2) whether Day was denied his right to a public trial when the trial court closed the courtroom during jury instructions.

1. Williams claims that the threats began in the months previous to April 24, 1987; however, the criminal complaint only charged Day with threatening Williams between the dates of April 24, 1987 and July 30, 1987.

Day contends that the trial court erred in ruling that the Commonwealth could introduce evidence to show that Williams was a witness against Day in a prior proceeding, but that neither the Commonwealth nor the defense could make reference to the underlying charges, facts of the case, or outcome of the trial. N.T., May 3, 1989, at 30–33. The trial court's ruling was in response to the following Commonwealth position.

The Commonwealth argued that it needed to show that Williams testified against Day in the first criminal action in order to prove the elements of the instant charge: intimidation of a witness. The Commonwealth asserted that it did not want to confuse or unduly influence the jury; nor did it want to "re-try" the first litigation. Thus, the trial court precluded the entry of all information relevant to the first trial, short of the fact that the first trial occurred. *See id.* at 31 ("The only issue before the Court and this jury is did he harrass (sic) him. Whether there is merit or not in the case that was brought against your client is immaterial ...").

Conversely, Day strongly opposed the trial court's ruling. He posited that his case would be prejudiced if the jurors were not informed of the outcome of the first proceeding because they would be free to surmise that Day was convicted of receiving stolen property and theft. Day suggested that the court issue a cautionary instruction to the jury rather than exclude the evidence altogether.[2] Finally, Day claimed that since he was acquitted after the first trial, Williams had a motive to fabricate his present testimony. He concluded that the jury's knowledge of the result of the first trial was pertinent because "the outcome of the earlier trial ... was probative of the complainant's motive for

2. Day states in his brief:
    Counsel suggested that the prosecution's concern about prejudice could be satisfied with a cautionary instruction from the court to the effect that the finding of the court in the first case should not 'be taken by them [the jurors] as binding on the veracity of Mr. Williams or as to whether the incident really happened,' but only as it might relate to the complainant's motive to lie in this case. Appellant's brief, at 4.

inventing new accusations against [Day] as part of a continuing pattern of harassment by the complainant against [Day]." Appellant's brief, at 5.

Day's main concern is that Williams' testimony exceeded the limiting mandates of the trial court on three occasions. *See* N.T., August 3, 1989, at 44, 52, 70.[3] He asserts that he

3. In pertinent part, Williams' testimony was as follows:

Q. [The prosecutor]: Mr. Williams, I'd like you to explain to the members of the jury exactly what occurred on or about the 24th of April, 1987 that brings you to court today to testify as a witness.
A. Well, on that morning around 11, 11:30, Mr. Charlie Day drove up in his car. I assume he had gotten out of jail because—
MR. MAAS: Objection, Your Honor, move for a mistrial.
THE COURT: I'll sustain your objection.
THE WITNESS: Well, anyway, he drove up.
BY MR. WINTER: Mr. Williams, let me ask you this—
MR. MAAS: Your Honor—
THE COURT: Please erase that from your minds, ladies and gentlemen.
MR. MAAS: I move for a mistrial.
THE COURT: I'll deny your motion for a mistrial.
N.T., August 3, 1989, at 44.
Q. [Defense counsel]: Sir, this course of action that you're talking about by Mr. Day started on April 24th of '87; is that correct? ...
Q. Well, is that the day on which you say Mr. Day threatened you?
A. [Williams]: That's the first day that he threatened me?
Q. Yes, sir.
A. No, it's not.
Q. Now, this other case you say had started several weeks before—
A. Excuse me?
Q. The case in which you were a witness—
A. That I charged him for burglarizing and stealing something out of my lot?
MR. MAAS: Well, I'm going to object to that, Your Honor. That's not responsive and I move for a mistrial.
THE COURT: I'll overrule your motion, deny your request for a mistrial, and I'd like to caution the jury and also this witness to respond as narrowly as you possibly can, and the ladies and gentlemen of the jury, please, I shall like you to exert every effort to erase that last remark of the witness from your minds.
*Id.* at 51–52.
Q. [Defense counsel]: Okay. You already said this happened every day at least once. I'm going to ask you up until what date did it happen every day?
A. Well, if I had a calendar—I couldn't actually put particularly two and a half months from the time he got the court order for him to stop from the Judge.
MR. MAAS: I object to that and move for a mistrial.

should have been permitted to correct the deficiencies in Williams' testimony by presenting evidence that he was not charged with burglary, was not jailed, and was subsequently acquitted in the first trial. Instantly, the trial court did not change its ruling. Day claims prejudice to his case. We disagree.

There are a number of competing legal propositions in this case which we need to clarify. First, the law is well established that the trial court enjoys broad discretion in admitting or excluding evidence. In *Commonwealth v. Meadows*, 381 Pa.Super. 354, 553 A.2d 1006 (1989), this Court held that:

> [t]he admission or exclusion of evidence is a matter specifically within the discretion of the trial judge, and we will not reverse his decision absent an abuse of that discretion. 'The test to be applied in determining the admissibility of such evidence involves weighing the inflammatory nature of this evidence against its essential evidentiary value.'

*Id.*, 381 Pa.Superior Ct. at 366, 553 A.2d at 1012 (citations omitted); *see also Commonwealth v. Barnhart*, 345 Pa.Super. 10, 497 A.2d 616 (1985) (the. admission or exclusion of evidence rests within the sound discretion of the trial court); *Commonwealth v. Robinson*, 332 Pa.Super. 147, 480 A.2d 1229 (1984) (trial court's decision to admit or exclude evidence will not be disturbed absent an abuse of discretion).[4]

> MR. WINTER: Your Honor, if I may respond? He's trying to be responsive to the question.
> THE COURT: Ask the questions more carefully perhaps.
> MR. WINTER: Perhaps.
> THE COURT: I'll sustain your objection.
> MR. MAAS: I move for a mistrial, your Honor.
> THE COURT: I'll deny your motion for a mistrial.
> *Id.* at 70.

4. As a corollary proposition, we note that the scope and manner of cross-examination are within the sound discretion of the trial court. *Commonwealth v. Jackson*, 336 Pa.Super. 609, 622, 486 A.2d 431, 438 (1984). Absent an abuse of discretion or an error of law, we will not disturb its rulings. *Id.; see also Commonwealth v. Iafrate*, 385 Pa.Super. 579, 585–86, 561 A.2d 1244, 1247 (1989), *appeal granted* 575 A.2d 109 (Pa.1990). Moreover, in determining the extent of cross-examina-

■ Here, during a motion in limine, the trial judge explicitly set forth the narrow issue to be tried. N.T., May 3, 1989, at 18, 20–22, 29–31. The court clearly stated that "[t]he only issue before the court and this jury is did he harass him. Whether there is merit or not in the case that was brought against your client is immaterial." *Id.* at 31.[5] It is apparent, given the number of times that defense counsel renewed his position, that the trial court determined that the underlying facts of the prior case as well as its outcome were immaterial and, in fact, irrelevant to the instant prosecution. We will not disturb the trial court's decision to exclude this evidence. *Commonwealth v. Lane,* 492 Pa. 544, 550, 424 A.2d 1325 (1981).

In *Commonwealth v. Haight,* 332 Pa.Super. 269, 481 A.2d 357 (1984), this Court defined "relevant evidence." We stated that evidence is relevant if it "logically or reasonably tends to prove or disprove a material fact in issue, or to make such a fact more or less probable, or if it affords the basis for a logical or reasonable inference or presumption as the existence of material fact in issue." *Id.* at 271, 481 A.2d at 359. *See also Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976), *appeal after remand* 483 Pa. 195, 394 A.2d 978 (1978).[6] *See* BLACK'S LAW DICTIONARY 881 (5th ed. 1979) (defines material evidence as

tion, the trial court may consider whether a matter is collateral and whether the jury is likely to be confused or misled by the testimony. *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989), *appeal granted* 524 Pa. 625, 574 A.2d 67 (1990).

5. Moreover, during the charge to the jury, the trial court clarified the issues at trial. N.T., May 4, 1989, at 164–71.

6. Day cites *Commonwealth v. Hill,* 523 Pa. 270, 566 A.2d 252 (1989) in support of his position that full cross-examination should be permitted

so long as it is relevant to the search for the truth of the matter under trial. This is especially true where the witness sought to be discredited as a major witness against the defendant and whose covert reasons for testifying in the matter must be allowed to be exposed.

*Hill,* at 273, 566 A.2d at 253. However, the *Hill* Court also stressed that "we must review each fact situation on a case by case basis to determine the relevance of the proposed testimony of the witness, for without relevance the testimony is prohibited ab initio." *Id.*

"[t]hat quality of evidence which tends to influence the trier of fact because of its logical connection with the issue.").

In the instant case, evidence that Day was acquitted of the crimes of receiving stolen property and theft is not probative of whether he harassed Williams. Moreover, the record indicates that Williams reported Day's threats before the first trial commenced; thus, he had no motive at that time to retaliate against Day. *See* (N.T., May 3, 1989, at 52, 57–67, 73, 75, 78–81).[7] We conclude that the trial court acted within its discretion in disallowing Day's proposed testimony. *See Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 471 A.2d 96 (1984) (trial court has a duty to weigh the value of evidence).

■ Second, both the Pennsylvania Supreme Court and this Court have held that evidence of a prior criminal action against a defendant is admissible for the purpose of proving an element of a presently-charged crime. *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982); *Commonwealth v. Markle*, 245 Pa.Super. 108, 369 A.2d 317 (1976). *See also Commonwealth v. Young*, 321 Pa.Super. 553, 468 A.2d 1127 (1983) (the Commonwealth does not have to try its case in a vacuum). The instant case falls squarely within the purview of *Young*. In that case, this Court stated:

> The shooting of Jefferson [the complainant] and the bringing of criminal charges against appellant because of the shooting were both relevant and material to prove the charge that appellant had attempted to intimidate the victim thereof. As such, the evidence of the earlier

7. Day argues in his brief that the outcome of the first trial was relevant to his defense; to wit, that Day's acquittal (or Williams' supposed anticipation of an acquittal) motivated Williams to press the instant charges. *See* Appellant's brief, at 25, 27–28. He theorized that Williams fabricated the threats in an effort to avenge his feelings of dissatisfaction with the outcome of the first trial. While we recognize that evidence of motive is always admissible, *Commonwealth v. Jackson*, 336 Pa.Super. 609, 622, 486 A.2d 431, 438 (1984), we fail to see how Williams was prompted to file threat and intimidation charges against Day as a result of his disappointment after the first trial, where the reports were lodged *before* the first trial began. *See* N.T., May 3, 1989, at 57–67, 73, 75, 78–81, 106–111, 132, 88–90.

shooting was properly received. (Citations omitted). The Commonwealth was not required to try its case in a vacuum; It could show not only that Jefferson had been the victim of a crime but also that he had been in possession of relevant information concerning the crime when an attempt was made to intimidate him.

*Id.,* 321 Pa.Superior Ct. at 556, 468 A.2d at 1128. Since we find that the holding in *Young* is applicable to the instant case, we conclude that the trial court did not err in permitting evidence of Day's prior trial. Furthermore, we do not find that the trial court abused its discretion in limiting the discussion of the prior trial to the fact that the trial occurred and that Williams was a witness therein.[8]

Third, the law is clear that the fact-finder is deemed to be in the best position to assess the credibility of a witness and to determine the weight of the evidence. *Commonwealth v. Jackson,* 506 Pa. 469, 475, 485 A.2d 1102, 1104–05 (1984); *Commonwealth v. Dreibelbis,* 493 Pa. 466, 469, 426 A.2d 1111, 1113 (1981). We will not engage in a reevaluation of the testimony of witnesses found credible by the finder of fact. *Commonwealth v. Parker,* 387 Pa.Super. 415, 421–22, 564 A.2d 246, 248 (1989). Moreover, it is within the province of the trier of fact to believe all, part or none of the evidence presented at trial. *Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984).

We have thoroughly reviewed the trial transcripts in the instant case. When evaluated in context, it is clear that the jury had ample testimony to consider from both the Commonwealth and the defense relative to the issue of whether Day threatened Williams. Day testified on his own behalf, and the jury was free to assess his credibility and to weigh his testimony. Williams also testified and presented a number of witnesses to corroborate his story.

**8.** With reference to the *Young* case, we are persuaded by the Commonwealth's observation that "[a]t best, [Day's] argument establishes only that the evidence [about his prior trial] *could have* been properly admitted. It does not follow that admission was required." Appellee's brief, at 4 n. 3.

After reading the trial transcripts, we hold that, even in spite of the trial court's rulings, Williams' passing references to the contents of Day's prior trial were insignificant. In other words, we cannot say that the trial court erred in disallowing Day to introduce other evidence about the first trial in light of Williams' comments, because, in addition to the foregoing discussion, any error that may have been caused by Williams' fleeting remarks was harmless. *See Commonwealth v. Bonace,* 391 Pa.Super. 602, 607, 571 A.2d 1079, 1082 (1990) ("Mere 'passing references' to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice resulted from the reference."); *Commonwealth v. Terry,* 513 Pa. 381, 403, 521 A.2d 398, 409 (1987) ("Under our harmless error test, an error is harmless if it does not prejudice the defendant, or the effect on the jury is minimal."). There is no reason that the facts of Day's prior trial would have (or should have) entered into the jury's deliberations in the present case. Additionally, the trial judge issued curative instructions after the infractions. *See Commonwealth v. Gbur,* 327 Pa.Super. 18, 24, 474 A.2d 1151, 1154 (1984) ("prompt and adequate cautionary instructions can cure what might otherwise be reversible error."). We hold that the evidence supported the jury's verdict in this case, and we do not find that Day was prejudiced merely because the trial court precluded the jury from knowing the underlying facts and outcome of his first trial.[9]

**9.** Day contends that by testifying, he placed his character for truthfulness at stake. Since credibility became an issue, he asserts that he was entitled to have the jurors informed that he was not convicted in his first trial.

In *Commonwealth v. Bricker,* 378 Pa.Super. 265, 548 A.2d 604 (1988), this Court fully discussed the principle of "harmless error." It stated:

However, assuming *arguendo* that the jury could infer from the testimony that Bricker had also been incarcerated, and that Bricker was therefore prejudiced, we would not find reversible error. Where this court is convinced beyond a reasonable doubt that the error did not contribute to the verdict, we may hold that reversal is not required because the error was harmless. [Citations omitted].

*Id.,* 378 Pa.Superior Ct. at 276, 548 A.2d at 609–10. The *Bricker* Court also cited *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), *appeal after remand* 497 Pa. 273, 440 A.2d 488 (1981) for the proposi-

■ Day also alleges that he was denied his right to a public trial because the trial court closed the courtroom doors during the jury charge. Day correctly states that "even if not absolute, this right of public access during all phases of a trial is great, and can be restricted only in the most limited circumstances." *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982); *Commonwealth v. Johnson,* 309 Pa.Super. 367, 377–78, 455 A.2d 654 (1982). Appellant's brief, at 32–33. Notably, the instant case reflects one of those circumstances.

Here, the court prevented ingress and egress during the jury instructions. However, the court did not instruct those already present to leave the courtroom. Additionally, the court did not prevent anybody from entering the courtroom before the instructions commenced. Since the court did not fully exclude the public, nor deny those present from hearing the proceedings, there was no violation of Day's constitutional right to a public trial.

In *Commonwealth v. Bullock,* 384 Pa.Super. 269, 558 A.2d 535 (1989), this Court addressed the instant issue. We stated:

> Appellant's final argument is that he was denied his right to a public trial by the trial court's refusal to allow spectators to enter or exit the courtroom during the court's charge to the jury. In response to this claim, the trial court stated:
>
> 'The doors of the courtroom squeak audibly on opening and closing causing a distraction. We believe we have the duty and discretion to protect the proceeding from interruptions. (Citations omitted). Moreover, our order did not exclude the public; those that were already inside the courtroom could remain; those that were not were

tion that "the determination of whether an error is harmless based on overwhelming evidence of guilt is closely tied to the facts of the particular case, thus requiring examination of the entire record." *Bricker,* 378 Pa.Super. at 278, 548 A.2d at 610, *citing Story,* 476 Pa. at 413 n. 24, 383 A.2d at 166 n. 24.

not precluded from entering before the charge. During the charge a court officer was posted outside to admit any member of the public that had immediate business before the Court. The closing of the court was brief and reasonable under the circumstances, far from the hyperbolized complaint that defendant was denied a public trial. The witnesses, defendant's family and friends and some spectators, as well as the jury, provided the elements of a public trial. The trial remained a public one at all times.' Trial court opinion at 9–10.

Members of the public were free to remain in the courtroom during the court's charge. Thus, the protections guaranteed by the right to a public trial were not offended, and we reject appellant's claim.

*Id.,* 384 Pa.Superior Ct. at 282–83, 558 A.2d at 541–42. We find *Bullock* to be controlling. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

I conclude that the trial judge abused his discretion in not permitting appellant Eugene Day to cross examine Commonwealth witness Julius Williams regarding the prior trial. I therefore dissent.

Appellant, who in the instant case was charged with intimidating a witness and terroristic threats, sought to cross examine Williams in this second trial regarding the facts of the first trial in order to show Williams' motive for giving false testimony. In the first trial appellant was acquitted of the charges of theft and receiving stolen property. Williams was the complaining witness in both trials. The majority addresses this argument as follows:

Day argues in his brief that the outcome of the first trial was relevant to his defense; to wit, that Day's acquittal (or William's supposed anticipation of an acquittal) motivated Williams to press the instant charges. *See* Appel-

lant's brief, at 25, 27–28. He theorized that Williams fabricated the threats in an effort to avenge his feelings of dissatisfaction with the outcome of the first trial. While we recognize that evidence of motive is always admissible, *Commonwealth v. Jackson,* 336 Pa.Super. 609, 622, 486 A.2d 431, 438 (1984), we fail to see how Williams was prompted to file threat and intimidation charges against Day as a result of his disappointment after the first trial, where the reports were lodged *before* the first trial began.

Op. at 406, n. 7.

The majority correctly notes that appellant's reason for wanting to cross-examine Williams about the first trial was to show the reasons why Williams as complainant initiated the second trial. However, a careful reading of the record reveals that appellant sought to show that, in addition, he wanted to cross-examine Williams to show his bias in the content of his testimony in the second trial. Appellant argues in his brief that he was "entitled to explore whether [Williams'] anger or dissatisfaction with the results of the earlier case caused the complainant to magnify or embellish his accusations at trial; whether, despite the verdict, he still believed that appellant was guilty of the other charges and should be punished, or whether he was influenced by any lingering ill feelings toward appellant as a result of the acquittal." Brief of appellant at 27–28. Appellant claims that cross examination about the prior trial would show that Williams was motivated in both the prior and instant trial by jealousy and desire for revenge against Day for his involvement with a woman. I therefore conclude the trial judge erred in limiting Day's cross-examination of Williams to preclude this inquiry.

Criminal defendants have a constitutional right to cross examine witnesses against them. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). Cross examination may be employed to test a witness' story, impeach credibility, and to establish a witness' motive for testifying. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347

(1974). The trial judge is not without discretion in this area, however, and he or she may limit cross-examination as to motive if the attorney is merely engaged in a baseless "fishing expedition." *Commonwealth v. Butler*, 367 Pa. Super. 453, 457, 533 A.2d 105, 107 (1987), *appeal granted*, 520 Pa. 595, 552 A.2d 249 (1988); *Commonwealth v. Ross*, 345 Pa.Super. 571, 498 A.2d 972 (1985). Appellant was not on a mere "fishing expedition," but asserted a valid basis for desiring to cross-examine Williams regarding the prior trial.

In *Commonwealth v. Robinson*, 507 Pa. 522, 528, 491 A.2d 107, 110 (1985), the Pennsylvania Supreme Court reiterated the settled rule that cross examination for the purpose of showing motive to give false testimony is a proper method of impeachment. *Robinson* involved a landlord who testified against two of her tenants in a trial for theft. The case arose out of a bitter dispute between the parties during the course of which the landlord had shut off the utilities, the tenants accused the landlord of stealing from them, and they withheld their rent. The dispute culminated in the landlord's conviction for aggravated assault for throwing lye on one of the tenants. The tenants moved out of the apartment, and the landlord filed charges with the police against them for stealing items from the apartment when they moved. *Id.*, 507 Pa. at 532, 491 A.2d at 109. At her trial for theft, Robinson, one of the tenants, sought to cross examine the landlord regarding the dispute, including the landlord's prior conviction for aggravated assault, in order to establish a motive on the part of the landlord to lie. The trial judge would not allow cross examination in any of these areas. *Id.*

The Supreme Court held that precluding this inquiry was error because the defendant was entitled to cross examine the witness for the purpose of showing a motive to give false testimony. The Court stated that the disallowance of this type of cross examination is particularly prejudicial when, as in *Robinson*, the evidence consisted of testimony in which the witnesses on the two sides presented conflict-

ing versions of the facts, and the outcome, therefore, depended on the credibility of the witnesses. *Id.*, 507 Pa. at 534, 491 A.2d at 110.

I find the present case to be analogous to *Robinson.* The parties have an antagonistic relationship that reaches beyond the instant dispute. The nature and history of this relationship, as in *Robinson,* is a proper area of impeachment as it is relevant to establishing a motive on the part of the witness to give false testimony. The facts surrounding the first prosecution are an important part of what has passed between these two parties. And since appellant took the stand in this case and presented an entirely different version of the facts, the outcome, like in *Robinson,* depended on the credibility of the witnesses. *See also Butler, supra,* (error to preclude cross examination to establish motive of police officer-witness regarding defendant's civil suit against him); *Commonwealth v. Ervin,* 262 Pa.Super. 322, 396 A.2d 776 (1978) (error to disallow cross examination designed to establish that there was "bad blood" between the witness and defendant).

I would therefore vacate judgment of sentence and remand for a new trial.